United States District Court
For the Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

San Francisco Division

| | |
|---|---|
| CRAIG YATES, an individual, | No. C 11-01950 LB |
| Plaintiff, | |
| v. | **ORDER** |
| SWEET POTATO ENTERPRISE, INC., a California Corporation dba POPEYES STORE #2794; and KUAN L. NG and HELEN L. NG, Trustees, of THE KUAN L. NG AND HELEN L. NG REVOCABLE TRUST OF 1993, | |
| Defendants | |
| _____/ | |

The court held a bench trial in this ADA case on October 6, 2014, issued its findings of facts and conclusions of law on November 3, 2014; awarded statutory damages of $4,000 for the March 4, 2011 visit; reduced the universe of compensable visits from 13 visits to 7 (March 8, April 12, May 13, and June 29, 2011, and January 8, March 11, and May 14, 2012); and ordered supplemental briefing on the issue of damages and mitigation. (ECF No. 166 at 3.)[1] The parties submitted their supplemental briefs. (ECF Nos. 169, 171.) In his brief, Plaintiff argued that the court should award him $20,000 for five visits. Defendants countered that he should be awarded statutory damages only for the March 4 visit because Mr. Yates made multiple visits with the improper motive to stack

---

[1] Record citations are to documents in the Electronic Case File ("ECF"); pinpoint citations are to the ECF-generated page numbers at the top of the documents.

ORDER
C 11-01950 LB

damages. (ECF No. 171.) The court held a hearing on December 11, 2014, only on the issue of the appropriate damages award. (ECF No. 176.)

The court's previous order analyzed all 13 visits, limited the universe of provable visits to 7, awarded damages for the first March 4, 2011 visit, and concluded that the timing of the remaining 6 visits suggested stacking damages, considering the case's time line. (ECF No. 166 at 20-27.) As to the 2011 visits, all were right before or close to the filing and service of the complaint. (*Id.* at 20-26.) Mr. Yates's post-trial briefing and arguments do not alter the court's analysis of and conclusion about the 2011 visits. (*Id.*) The court now concludes definitively that all the 2011 visits (except for the March 4 visit) were "before [Mr. Yates] could reasonably expect that the barrier was corrected." *Yates v. Vishal*, No. 11-CV-643-JCS, 2013 WL 6073516, at *4 (N.D. Cal. Nov. 18, 2013). That leaves the three 2012 visits at issue: January 8, March 11, and May 14, 2012.

Those visits were added by the amended complaint filed on June 20, 2012, weeks after the initial case-management conference. (ECF No. 166 at 26.) Looking at the interrelationship of the visits with docket events yields the following time line:

| Date | Event |
|---|---|
| 4/21/2011 | Complaint filed. (ECF No. 1.) |
| 12/7/2011 | Mediation set for February 26, 2012. (Docket entry.) |
| 1/8/2012 | Mr. Yates visits the Popeyes. |
| 2/6/2012 | Mediation held. (ECF No. 11.) |
| 2/8/2012 | Motion for case-management conference. (ECF No. 12.) |
| 2/10/2012 | Case-management conference set for 3/21/2012. (ECF No. 13.) |
| 3/9/2012 | Case-management-conference statement filed. (ECF No. 14.) |
| 3/11/2012 | Mr. Yates visits the Popeyes. |
| 5/4/2012 | Case-management conference reset to 5/17/2012. (Docket entry.) |
| 5/7/2012 | Updated case-management-conference statement filed. (ECF No. 15.) |
| 5/14/2012 | Mr. Yates visits the Popeyes. |
| 5/17/2012 | Case-management conference. Referred for settlement conference in January 2013 (not 2012, as wrongly cited in the court's findings of fact and conclusions of law at ECF No. 166 at 26). (ECF No. 16.) |
| 6/20/2012 | Amended complaint. (ECF No. 19.) |

The time line thus shows that each visit to the Popeyes was close in time to a significant court event, including a visit in January 2012 before the February 2012 mediation. It also shows the filing of the amended complaint to include visits right before the court's deadline for amending the pleadings and before the court-ordered mediation in January 2013. (ECF No. 16.) The time line provides context but it does not end the inquiry.

Defendants argue that what does end the inquiry is that the franchisee Jesse Chen had trained Popeyes employees to look out and open the door for disabled patrons. (ECF No. 171 at 3.) But the record supports only the conclusion that they did so after the bell was installed. At trial, Mr. Chen testified that his employees opened the door when someone needing help rang the bell. (ECF No. 163 at 92-93.) But no bell is shown in Exhibit 7, which is a picture taken on January 9, 2013. The parties stipulated that Exhibit 7 shows the entrance at the time Mr. Yates visited the Popeyes. (JSUF # 8.) Exhibit 9 shows that the bell was installed as of August 20, 2014. (ECF No. 166 at 12; Ex. 9.) Thus, there was no bell at the time of Mr. Yates's 2012 visits.

But that does not dispose of the issue either. Because the alleged violations happened after 2010, the provisions of the Construction Related Standards Compliance Act apply. Cal. Civ. Code §§ 55.51-55.57; *Yates v. Auto City 76*, No. C 10-3932 EMC, 2014 WL 5767506, at *2 (N.D. Cal. Nov. 5, 2014). That statute protects against "abusive access litigation" by "emphasizing the requirement that plaintiffs mitigate their damages." *Yates v. Auto City 76*, 2014 WL 5767506, at *2 (collecting cases). Specifically, California Civil Code § 55.56(g) states that "it does not alter . . . any legal obligation of a party to mitigate damages." And the statute also states that "in assessing liability . . . the court shall consider the reasonableness of plaintiff's conduct in light of the plaintiff's obligation, if any, to mitigate damages." Civil Code § 55.56(h).

As Judge Chen points out in *Yates v. Auto City 76*, the legislative comments to section 55.56 state that the key inquiry regarding mitigation of damages is whether a plaintiff has a "reasonable explanation for the repeated conduct." Cal. Stats. 2012, ch. 383, sec. 25 (S.B. 1186). A plaintiff "must have a reasonable explanation for the asserted need for multiple visits to a site where a known barrier would deny full and equal access, in light of the obligation to mitigate damages." *Id.* "Courts in this district have consistently acknowledged this principle, holding that disabled plaintiffs

who encounter architectural barriers may fail to meet their duty to mitigate where they make multiple visits to the same facility before they could reasonably expect that the barrier was corrected . . . ." *Yates v. Auto City 76*, 2014 WL 5767506, at *3 (internal quotation and citations omitted) (collecting cases in the Northern and Eastern Districts of California).

Here, Mr. Yates's explanation for his many visits essentially was that he was in the city, he frequented the Popeyes on Divisidero for convenience, and he liked the chicken's Louisiana flavor. (*See* ECF Nos. 166 at 4, 163 at 32:19-33:1-4.) Mr. Yates explained that it was the Louisiana flavor that motivated his visit to this chicken restaurant as opposed to "other chicken restaurants such as KFC." (ECF No. 163 at 32:23-33:1.) But as Defendants point out, this does not explain why Mr. Yates could not frequent the other Popeyes in San Francisco on Fillmore Street, which is closer to his home in San Rafael. (ECF No. 166 at 24.) The court accepts Mr. Yates's explanation about why he visited the explanation, as it must. *See Yates v. Auto City 76*, 2014 WL 5767506, at *4. Nonetheless, the court concludes on this record that it was not reasonable within the meaning of the California Civil Code for Mr. Yates to visit the Popeyes repeatedly given his awareness of the architectural barriers to access. *See id.* (finding it unreasonable as a matter of law that Mr. Yates returned 16 times to a gas station to get discounted gas and a good car wash, despite Mr. Yates's testimony that he traveled frequently to San Francisco from San Rafael to visit attractions such as Golden Gate Park or the DeYoung Museum).

Moreover, the access issue here involves a restaurant that was run by Mr. Chen, his wife, and his mother. (ECF No. 166 at 9.) Mr. Chen and his wife work there full time. (*Id.*) Again, despite Defendants' arguments that the Chens were aware of Mr. Yates by 2012 and were opening the door, the court cannot conclude from the record that this was necessarily so for the 2012 visits. That being said, it is not implausible that they were. And the reality is that this was a family-owned franchise, and Mr. Yates could have told someone about the barrier (as was his general practice). (ECF No. 166 at 7-8.) Instead, he never told anyone about the access issues. (*Id.* at 5.) His failure to do so renders his repeated visits to the Popeyes unreasonable stacking of damages, especially because – given the litigation – Mr Yates could not reasonably expect before any given visit that Defendants had corrected the barrier.

Mr. Yates nonetheless argues that a disabled person should not have to speak to the franchisee as a prerequisite of mitigation. (ECF No. 169 at 4.) He says that such a conversation is a "confrontation" that risks hostility and harm in today's "world of 'rage.'" (*Id.*) Perhaps that could be true in situations other than a restaurant run full-time by Mr. Chen and his family. But given the court's observation of Mr. Chen's demeanor and affect, which was low-key and pleasant, the court cannot credit this argument. It also is contrary to Mr. Yates's usual practice of giving notice before suing. (ECF 166 at 7-8.)

Mr. Yates's counsel also argued at the hearing that it took Mr. Chen too long to fix the barriers, the ADA is necessarily about a plaintiff's access, and Mr. Yates ought to be able to re-visit a restaurant after some reasonable period of time. But this does not change the fact that Mr. Yates made multiple visits when he knew the barrier was not corrected, and the court cannot conclude that Mr. Yates proffers a "reasonable explanation for the repeated conduct." Cal. Stats. 2012, ch. 383, sec. 25 (S.B. 1186); *see Yates v. Auto City 76*, 2014 WL 5767506, at *3. The court concludes that Mr. Yates's conduct was not reasonable within the meaning of the California Civil Code and limits his damages to $4,000 for the March 4, 2011 visit.

The remaining issue is Mr. Yates's fee motion. The court orders the following. By January 8, 2015, Plaintiff's counsel must make a fee demand to Defendants and must provide the appropriate documentation. Defendants must talk to their clients about the fee demand and tell Plaintiff's counsel by January 15, 2015, whether they intend to litigate the motion. Any motion for attorney's fees must be filed by January 29, 2015, absent further order of the court. The court reminds the parties that it previously held that they share responsibility for the protracted litigation over a barrier that was remained in place until late in the litigation. Put another way, Defendants should not assume that the court's limitation of damages operates as an equivalent limitation on attorney's fees.

The parties must confer and submit a proposed form of judgment by December 24, 2014, at noon.

**IT IS SO ORDERED**.

Dated: December 22, 2014

_____
LAUREL BEELER
United States Magistrate Judge