UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

San Francisco Division

| | |
|---|---|
| CRAIG YATES, an individual, <br><br> Plaintiff, <br><br> v. <br><br> SWEET POTATO ENTERPRISE, INC., <br><br> Defendants. | Case No. 11-cv-01950-LB <br><br> **ORDER** |

# INTRODUCTION

On remand, there are two issues: (1) whether the installation of the power door was readily achievable during Mr. Yates's visits to the Popeyes restaurant from March 8, 2011 to August 21, 2013, and (2) whether the court must issue an injunction mandating the power door, or whether the issue is moot. *Yates v. Sweet Potato Enter., Inc.*, Nos. 15-15083 and 15-15134, Mem. Op. (9th Cir. Mar. 22, 2017). The parties also dispute whether Mr. Yates may move for attorney's fees.[1]

The court finds that installation was readily achievable and that the injunction is moot. The court allows Mr. Yates's fees motion. The timeline is in the Conclusion.

---

[1] Defendants' Opening Brief – ECF No. 212 at 9–15; Plaintiff's Opposition – ECF No. 213 at 7. Citations refer to material in the Electronic Case File ("ECF"); pinpoint citations are to the ECF-generated page numbers at the top of documents.

ORDER – No. 11-cv-01950-LB

## ANALYSIS

### 1. The Power Door Was Readily Achievable By March 2011

The court incorporates its previous analysis about the burdens of establishing that removal of an architectural barrier is readily achievable.[2] The court found previously that Mr. Yates met his burden of establishing that there was a barrier and proposing a solution — a power door[3] — "which is one of the examples provided in the federal regulations as to the type of remedial step which might be "easily accomplishable and able to be carried out without much difficulty or expense.""" *Yates*, Nos. 15-15083 and 15-15134, Mem. Op. at 3 (citing 28 C.F.R. § 36.304(a), (b)(11)).[4] *Colorado Cross Disability Coalition v. Hermanson Family, Ltd.*, 264 F.3d 999, 1002–03 (10th Cir. 2001). The defendants "bear[] the ultimate burden of persuasion that barrier removal is not readily achievable. . . ." *Id.* at 1002–03.

The defendants did not meet this burden for the relevant time period from March 2011 to August 2013. As the court found previously, the franchise owner Jesse Chen agreed that he could have afforded the remediation (and the court meant that finding to encompass the entire time period relevant to the litigation).[5] He and his wife took home roughly $50,000 per year, which is relatively modest, but he said too that he used his personal credit cards to make repairs.[6] And when asked whether he could "afford between 2004 and today [the 2014 trial date] the $3,500 [the plaintiff's quote] to make the doors power-operated," he answered, "I would say yes, we would have the money at certain times, but we did not know that we were obligated to do that. You know, we didn't know."[7] He continued, "We thought we were exempt or somehow."[8] In response

---

[2] Findings of Fact and Conclusions of Law – ECF No. 166 at 16–19.

[3] *Id.* at 18.

[4] *Id.* at 17 (citations omitted).

[5] *Id.* at 12. The owners of the property (also defendants) carried no mortgage and had annual revenue that would have covered the modest cost of the power door in 2011. *Id.* at 8, Ex. 73. The court does not rest its conclusion of "ready achievability" here on that fact.

[6] Reporter's Transcript ("RT") – ECF No. 163 at 123.

[7] *Id.* at 121.

[8] *Id.*

ORDER – No. 11-cv-01950-LB           2

to a line of questioning about other repairs, he agreed that he had $500 to buy a table in any given year and "if it . . . cost less than a thousand dollars" [the plaintiff's estimate for a lower counter], he could have afforded that.[9] And in his brief, the plaintiff points to more evidence: (1) Mr. Chen's deposition testimony about Popeye's $750,000 in gross revenue each year from 2008 to 2011 (and estimated to be the same in 2012); and (2) Mr. Chen's agreement that from July 2007 to "the present" (the deposition date of December 5, 2012), he could afford to set aside $300 per month for capital expenditures and could afford to spend $4,000 for a power door.[10]

The court concluded at trial — though perhaps not as explicitly grounded in a time frame as it should have — that installing the power door was readily achievable during the time periods alleged in the complaint.[11] The court finds more specifically now that Mr. Chen's remediation of the barrier was readily achievable throughout the litigation and the time period that preceded it, and certainly during the time period specified by the Ninth Circuit: March 8, 2011 to August 21, 2013. *See Yates*, No. 15-15083 and 15-15134, Mem. Op. at 3.

The delay in installation does not alter the fact that remediating the barrier was readily achievable. As the court has remarked over the course of the litigation, both parties bear responsibility for the delay.[12] It resulted (at least in part) from the plaintiff's expert's insistence — over the defendants' argument to the contrary — that the landing needed to be remediated by getting the City of San Francisco to raise the sidewalk or install a ramp.[13] At trial, the expert testified that this was a mistake and that his report should have said that Popeyes could not put in a ramp.[14] But the insisted-upon remediation (ramp or raised sidewalk) looked expensive (and not achievable, aside from its (ultimate) actual impossibility). The parties' disagreement about achievability — predicated entirely on the plaintiff's expert's mistake — meant that the entire case

---

[9] *Id.*

[10] Plaintiff's Memorandum – ECF No. 211 at 11–12; Chen Dep. – ECF No. 211-2 at 11–12 (¶¶ 9–10). The trial exhibits cover this territory too.

[11] Findings of Fact and Conclusions of Law – ECF No. 166 at 12.

[12] *See id.* at 26–27.

[13] *Id.* at 26.

[14] *Id.*

ORDER – No. 11-cv-01950-LB    3

became paralyzed to the point that "the litigation dragged on with a considerable and unnecessary expenditure of resources by everyone and prevented the problem from being addressed early in the litigation. . . ."[15] But that paralysis — resulting from the mistake of fact about the scope of the remediation — does not alter the fact that installing a power door was readily achievable by the March 4, 2011 visit.

Thus, the court (again) awards damages of $4,000 for the March 4, 2011 visit.[16]

The plaintiff argues that the court must revisit its one-visit award.[17] As the defendants argue, the Ninth Circuit did not disturb the court's damages assessment and limitation of damages to one visit.[18] *Yates*, No. 15-15083 and 15-15134, Mem. Op. at 2–3 (recognizing the court's decision that California law barred recovery for all but the March 4, 2011 visit and reversing only on the ground that the "district court made no explicit findings that removal of the barrier was readily achievable at the time of Mr. Yates' first visit in March 2011 — the visit upon which the damages award was based — or at the time of any subsequent visit."). The court's decision — that Mr. Yates's conduct was not reasonable under the California Civil Code and that statutory damages are limited to $4,000 for the March 4, 2011 visit — stands.[19]

## 2. The Injunction Is Moot

The court previously held that installation of a power door was readily achievable in October 2014.[20] It did not grant an injunction because everyone contemplated — and the defendant said at trial — that the defendant would install the power door.[21] The court raised the issue of the injunction at the end of trial, contemplated that the issue would be moot by the time it issued its

---

[15] *Id.*

[16] Order – ECF No. 177 at 5.

[17] Plaintiff's Memorandum — ECF No. 211 at 13.

[18] Order – ECF No. 177 at 5; Defendants' Responding Brief – ECF No. 214 at 5.

[19] Order – ECF No. 177 at 4–5.

[20] *Id.* at 4.

[21] RT – ECF No. 163 at 13–14, 147; Findings of Fact and Conclusions of Law – ECF No. 166 at 18–19.

ORDER – No. 11-cv-01950-LB   4

order, and suggested that the defendants might submit verification.[22] And after the hearing, the focus was on damages,[23] and (to the best of the court's recollection), no one raised the issue of the injunction at or after the damages hearing. In any event, the defendants installed the power door on November 14, 2014.[24] The court now finds that the injunction is moot.

"[T]o invoke the jurisdiction of the federal courts, a disabled individual claiming discrimination must satisfy the case or controversy requirement of Article III by demonstrating his standing to sue at each stage of the litigation." *Chapman v. Pier 1 Imports (U.S.) Inc.*, 631 F.3d 939, 946 (9th Cir. 2011) (citing U.S. Const. art. III, § 2; *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)). In particular, "to pursue injunctive relief, which is the only relief available to private plaintiffs under the ADA, he must demonstrate a "real and immediate threat of repeated injury" in the future." *Id.* (quoting *Fortyune v. Am. Multi-Cinema, Inc.*, 364 F.3d 1075, 1081 (9th Cir. 2004)) (footnote omitted).

"Mere voluntary cessation of allegedly illegal conduct does not moot a case; it if did, the courts would be compelled to leave [t]he defendant . . . free to return to his old ways." *United States v. Concentrated Phosphate Exp. Ass'n*, 393 U.S. 199 (1968) (quoting *United States v. W.T. Grant Co.*, 345 U.S. 629, 632 (1953)); *see also Adarand Constructors, Inc. v. Slater*, 528 U.S. 216, 222, (2000). Voluntary cessation of illegal conduct does not render a challenge to that conduct moot unless "(1) there is no reasonable expectation that the wrong will be repeated, and (2) interim relief or events have completely and irrevocably eradicated the effects of the alleged violation." *Barnes v. Healy*, 980 F.2d 572, 580 (9th Cir. 1992); *see also Lindquist v. Idaho State Bd. of Corrs.*, 776 F.2d 851, 854 (9th Cir. 1985) (quoting *Davis*, 440 U.S. 625, 631 (1979)).

After the trial, the defendants installed a power door at a cost of $5,850.[25] No one argues that it is inadequate. The court finds that it is adequate and appropriate.

The plaintiff nonetheless contends that injunctive relief is not moot because if the power door

---

[22] RT – ECF No. 163 at 147.

[23] Order – ECF No. 177; Briefs – ECF Nos. 169, 171.

[24] Chen Decl. – ECF No. 212-1 at 2 (¶ 3).

[25] *Id.* & Ex. 1 (photographs).

1   requires service or maintenance, then the defendants might "erect a sign and a bell and declare the

2   access problem solved."[26] The plaintiff speculates that because the defendants were "more than

3   willing" to adopt this solution during the case, they might do so again.[27] He concludes that only an

4   injunction ensures compliance in perpetuity.[28]

This argument does not change the court's conclusion that the injunction is moot. Based on the entire record in the case and specifically the trial testimony, there is no real threat of repeated injury and no reasonable expectation that the wrong will be repeated. *See Barnes*, 980 F.2d at 580. And the installation of the door has "completely and irrevocably eradicated the effects of the alleged violation." *Id.*

The plaintiff's argument hinges on the defendants' allegedly bad (or at least imperfect) motives in installing a sign and a bell previously. But the court found specifically that Mr. Chen was credible and sincere in his efforts to approach the remediation and the remodel.[29] And as the court recounts in the previous section, both parties are responsible for the delay. The court rejects the bad-motive argument and holds that the claim for injunctive relief is moot.

### 3. Attorney's Fees

The last issue is whether the plaintiff may move for his attorney's fees. He did not file a bill of costs, and he did not file a fees motion either, by the court's deadline of January 29, 2015, or otherwise.[30] The Ninth Circuit did not address the fees issue because the parties did not raise the issue here. *Yates*, Nos. 15-15083 and 15-15134, Mem. Op. at 5. The court finds excusable neglect, allows the fees motion, and denies any request to file a bill of costs.

Federal Rule of Civil Procedure 54(d)(1) provides that the clerk may tax costs on 14 days' notice. Civil Local Rule 54-1 requires the following: "No later than 14 days after entry of

---

[26] Plaintiff's Memorandum – ECF No. 211 at 8.
[27] *Id.*
[28] *Id.*
[29] *See, e.g.*, Findings of Fact and Conclusions of Law – ECF No. 166 at 12.
[30] Order – ECF No. 177 at 5; *see generally* Docket.

judgment or order under which costs may be claimed, a prevailing party claiming taxable costs must serve and file a bill of costs." The plaintiff does not ask explicitly to file a bill of costs; his argument is about his fees.[31] In any event, the court rules that he cannot file a bill of costs now because it is more than 14 days after entry of judgment.

A claim for attorney's fees must be made by motion filed no later than 14 days after the entry of judgment, unless a statute or court order provides otherwise. Fed. R. Civ. P. 54(d)(2)(B)(i). Civil Local Rule 54-5 provides more specifically that "[u]nless otherwise ordered by the Court after a stipulation to enlarge time under Civil L. R. 6-2 or a motion under Civil L. R. 6-3, motions for awards of attorney's fees by the Court must be served and filed within 14 days after entry of judgment by the District Court. Filing an appeal from the judgment does not extend the time for filing a motion." *See also* Fed. R. Civ. P. 54(d) advisory committee's note to 1993 amendment.

Failure to file a timely motion for attorney's fees waives a party's right to request fees. *Port of Stockton v. Western Bulk Carrier KS*, 371 F.3d 1119, 1121–1122 (9th Cir. 2004). If made after the expiration of the period, the request must be by formal motion, and the requesting party has the burden of showing "excusable neglect." Fed. R. Civ. P. 6(b)(1)(B); *Committee for Idaho's High Desert, Inc. v. Yost*, 92 F.3d 814, 824 (9th Cir. 1996).

The following chronology is relevant to the determination about excusable neglect.

On December 22, 2014, at the end of its order awarding $4,000 for the March 2011 visit, the court directed the parties to submit a proposed form of judgment by December 24, 2014, and it set the following schedule regarding a motion for attorney's fees: (1) the plaintiff must make a fee demand with the appropriate documentation by January 8, 2015; (2) the defendants must respond by January 15, 2015, with their position about whether the fees issue needed to be litigated; and (3) any motion for attorney's fees must be filed by January 29, 2015, absent further order of the court.[32] The December 24, 2014 judgment said that the court would decide the plaintiff's entitlement to attorney's fees by separate noticed motion.[33]

---

[31] *See* Plaintiff's Opposition – ECF No. 213 at 7.

[32] Order – ECF No. 177 at 5.

[33] Judgment – ECF No. 179 at 2.

ORDER – No. 11-cv-01950-LB    7

The plaintiff never filed a motion for attorney's fees, by January 29, 2015, or otherwise.[34] Instead, the parties appealed.[35] On March 25, 2015, the defendants filed a letter (1) referencing the court's scheduling order for the fees motion, (2) stating that the plaintiff did not make a demand with documentation and instead said that he would "entertain a reasonable offer, (3) arguing that the time period to file a motion for fees had passed under Rule 54(b)(2)(b), and there was no "excusable neglect" under the relevant case law, and (4) asking for an order that the plaintiff forfeited his right to seek fees and costs."[36] On March 26, 2015, the plaintiff responded that he was unavailable through May 5, 2015, and stated his position that "the court should take no action on this matter until there is a ruling by the court of appeals."[37]

On March 27, 2017, the court issued the following text order:

> The defendants have filed a letter (ECF No. 193) asking the court to deny the plaintiff's claim for attorney's fees and litigation costs due to (in the defendants' view) the plaintiff's failure to comply with the court's directions concerning the request for fees and costs. This letter is not formally the appropriate device for asking the court to do something; and, while the court appreciates the defendants' substantive discussion, in this case's present posture, the letter does not afford sufficient substantive ground for taking the requested action.
>
> If the defendants wish the court to do something, they should file a noticed motion and supporting memorandum. Their discussion should address, in addition to the points made in their letter, what effect (if any) the pending appeal has on what this court can do with respect to the plaintiff's request for fees and costs.
>
> Should the defendants file such a motion before or on May 5, 2015, the plaintiff's 14-day period to file an opposition will run from May 5th; that is, as if the defendants' motion had been filed on May 5th. The defendants will then have the usual seven-day period in which to reply. Civ. L.R. 7-3(c).[38]

Under the circumstances, the court will allow the fees motion. As the plaintiff points out, the Advisory Committee note provides the following:[39]

---

[34] *See generally* Docket.

[35] ECF Nos. 185, 186.

[36] Letter – ECF No. 193.

[37] Letter – ECF No. 194.

[38] Text Order – ECF No. 195.

[39] Plaintiff's Opposition – ECF No. 213 at 7.

ORDER – No. 11-cv-01950-LB    8

> A notice of appeal does not extend the time for filing a fee claim based on the initial judgment, but the court under subdivision (d)(2)(B) may effectively extend the period by permitting claims to be filed after resolution of the appeal. A new period for filing will automatically begin if a new judgment is entered following a reversal or remand by the appellate court or the granting of a motion under Rule 59.

Fed. R. Civ. P. 54(d) advisory committee's note to 1993 amendment.

The court's scheduling order with its damages determination was meant to postpone the fees motion (to save costs) and encourage the parties to resolve their fees dispute, especially given that the remediation of the barrier was delayed because of the plaintiff's expert's mistake. The entire litigation spun up, far beyond Mr. Yates's usual lawsuits. The court emphasized the parties' collective responsibilities in its orders: Mr. Yates's responsibility for his expert's mistakes (and his many unreasonable visits given his awareness of architectural barriers), and the defendants' inaction in the face of obvious, affordable, and achievable removal of barriers.

Of course, the parties should have done something more. The court told them to. But it was not unreasonable for the plaintiff's counsel to conclude that the court tacitly approved his argument to stay the fees issue pending appeal, given that the court (1) can postpone the fees determination (as it did) and (2) directed action only by the defendants. Also, the Ninth Circuit's remand allows the court to consider the issue.

The court will permit the fees motion.

## CONCLUSION

The court finds that the installation of the power door was readily achievable on March 8, 2011, awards $4,000 in damages for the March 8 visit, and denies the request for injunctive relief as moot. The court directs the parties to confer about a proposed form of judgment and to submit it within three business days.

As discussed at the hearing, the parties must confer on a settlement process and submit their proposal within seven days. The plaintiff must make a fees demand and provide the detail about fees discussed at the hearing. The fees motion is due 14 days after the settlement conference or mediation absent stipulation of the parties and further order of the court.

To avoid losing track of the case, the court sets a case-management conference for November

ORDER – No. 11-cv-01950-LB 9

16, 2017, at 11 a.m.

**IT IS SO ORDERED.**

Dated: September 21, 2017

_____
LAUREL BEELER
United States Magistrate Judge